# EXHIBIT 2A



# IN THE DISTRICT COURT OF CLEVELAND COUNTY
## STATE OF OKLAHOMA

| | |
|---|---|
| **(1) LOIS JENKINS,** )<br><br>Plaintiff, )<br><br>*versus* )<br><br>**(1) CSAA INSURANCE EXCHANGE;** )<br>**(2) CSAA FIRE AND CASUALTY** )<br>   **INSURANCE COMPANY d/b/a** )<br>   **AAA FIRE & CASUALTY** )<br>   **INSURANCE COMPANY; and** )<br>**(3) AUTOMOBILE CLUB OF OKLAHOMA** )<br>   **d/b/a AAA OKLAHOMA,** )<br><br>Defendants. ) | Case No. CJ-2020-393<br>Virgin<br><br>STATE OF OKLAHOMA }<br>CLEVELAND COUNTY } S.S.<br>**FILED**<br><br>MAR 27 2020<br><br>In the office of the<br>Court Clerk MARILYN WILLIAMS |

## PETITION

**COMES NOW** the Plaintiff, Lois Jenkins (hereinafter "Plaintiff"), and for

her causes of action against Defendants, CSAA Insurance Exchange (hereinafter

referred to as "CSAA"), CSAA FIRE AND CASUALTY INSURANCE

COMPANY d/b/a AAA FIRE & CASUALTY INSURANCE COMPANY

(hereinafter referred to as "CSAAFCIC"), and AUTOMOBILE CLUB OF

OKLAHOMA, d/b/a AAA OKLAHOMA (hereinafter referred to as "AAA")

(collectively hereinafter "Defendants") hereby states as follows:

## STATEMENT OF FACTS

1.    Plaintiff has an insurable interest in the property located at 3329 Chardonnay

      Lane, Norman, OK 73071, Norman, Cleveland County, Oklahoma.

2.    CSAA is an unincorporated association under California law and is a

1

reciprocal insurance exchange.  As a reciprocal inter-insurance exchange, CSAA is owned by its policyholders/members and are citizens of every state in which it has policyholders, including Oklahoma.  CSAA may be served with process upon its Registered Agent, CT Corporation System, 120 N. Robinson, Oklahoma City, OK 73102.

3.      CSAAFCIC is a foreign corporation incorporated under the laws of the State of Indiana, with its principal place of business in the State of California and is an insurance company registered to engage in the business of insurance in the State of Oklahoma.  CSAAFCIC may be served with process through the Oklahoma Insurance Department located at 5 Corporate Plaza, 3625 NW 56th St., Suite 100, Oklahoma City, OK 73112.

4.      CSAA and CSAAFCIC are all part of a reciprocal inter-insurance exchange which pools its business among other insureds and "exchange policies" within the CSAA Insurance Group of companies sharing premiums, expenses and losses.  By and through this inter-insurance exchange, CSAA directly or through its subsidiaries issues policies, collects premiums, pays commissions to agents, and handles every aspect of the CSAAFCIC property claim claims handling.

5.      AAA is a domestic not for profit Oklahoma company.  For homeowners in Oklahoma to purchase insurance for their home, they must first be a member of AAA, which is the trade name for Automobile Club of Oklahoma.  Plaintiff is a member of AAA.  AAA may be served with process at 2121 E

2

15th Street in Tulsa, Oklahoma 74104.

6.     Upon information and belief, CSAA is the parent company of AAA and Defendants all operate and are part of a reciprocal insurance exchange wherein they pool and partner their businesses under a regime of control whereby all of CSAA's subsidiaries and affiliated companies can be held liable for breach of contract and bad faith.

7.     Defendants are unable to establish the existence of complete diversity between the parties.

8.     A substantial part of the events and actions giving rise to Plaintiff's claims herein occurred in Cleveland County, Oklahoma, including but not limited to delivery of the subject insurance contract; the water damage event that caused covered damages to Plaintiff's property; claims handling and adjustment of Plaintiff's claim; and inspection of the Plaintiff's property. Accordingly, pursuant to 12 O.S. § 137, venue is proper in Cleveland County.

9.     Plaintiff entered into a contract for insurance with Defendants to provide coverage for her property and contents. Plaintiff's insured property is in Norman, Cleveland County, Oklahoma.

10.    Plaintiff purchased an enhanced replacement cost homeowner's policy of insurance, Policy No. HO5412164 ("Policy"), with a policy period of 9/16/17 to 9/16/18. *See* certified Policy attached as Exhibit 1.

11.    The Policy states in pertinent part, among other things:

Section I – Property Coverages

**A. Coverage A – Dwelling**

    1. **We cover**:

        a. The dwelling on the "residence premisies" shown in the Declarations, inc **a.** The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and

        b. Materials and supplies located on or next to the "residence premises" used to consutruct, alter or repair the dwelling or other structures on the "residence premises."

**Section I – Perils Insured Against**

We insure against risk of direct physical loss to property described in coverages A, B and C.

We do not insure, however, for loss:

A. Under Coverages A, B and C:

    2. Caused by:

        d. Constant or repeated seepage or leakage of "water" or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of "water" or the presence or condensation of humidity, moisture or vapor is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

*See* Exhibit 1 attached.

12.    On March 29, 2018, Plaintiff's insured property was severely damaged as a

direct result of water damage when Plaintiff's laundry room sink overflowed.

The overflow dispersed water into the cabinet, cabinet drawers, and laundry

room floor and unbeknownst to Plaintiff water also dispersed to connected

rooms, and under walls, and under flooring.  Plaintiff immediately cleaned

up and mitigated all obvious and known water damage.

13.   At the time of this water loss, Plaintiff's home was under contract to sale.
So, in an effort to mitigate the loss, Plaintiff immediately called her realtor
to tell her about the sink. Plaintiff's realtor recommended a carpenter to
inspect and make any needed repairs.

14.   On March 30, 2018, Plaintiff's carpenter estimated $800.00 in damages. The
carpenter removed approximately six of the drawers and cabinets that the
water damaged to take to his workshop for repair. According to carpenter's
inspection, all other obvious areas the water affected had dried out by this
time and required no service.

15.   Although there was no obvious water remaining after Plaintiff cleaned and
after the carpenter inspected and made necessary repairs, there was water
damage beneath the flooring and in the walls that was unknown and hidden
from Plaintiff on the date of loss.

16.   Plaintiff sold the property on April 12, 2018. At the time of the sale, neither
party to the sale articulated any concerns as to the condition of the sink or
surrounding area.

17.   On May 17, 2018, Plaintiff's realtor advised that the Buyer contacted her and
stated he found significant buckling in the floor where the sink overflowed
and dispersed water.

18.   Plaintiff timely and properly submitted a claim for damages to Defendants
on May 17, 2018. On May 18, 2018, Defendants responded via letter stating

it had opened Claim No. 1002-68-2784.

19.   Defendants retained U.S. Adjusting to assist with the claim and on May 24, 2018, Michael White, an independent adjuster with U.S. Adjusting Services, inspected Plaintiff's property.  *See* Oklahoma Insurance Department Letter attached as  Exhibit 2.

20.   Defendants also retained American Leak Detection who conducted water pressure and hydrostatic testing for new leaks and to determine if a water leak damaged the living room floor.  American Leak Detection inspected the property on June 19, 2018, and found no leaks in any lines it tested at the covered property.  *See* Exhibit 2.

21.   On June 27, 2018, Defendants denied Plaintiff's claim stating that Plaintiff's damages were excluded under the constant or repeated seepage of water provision of the policy.  Defendants further alleged that Plaintiff failed to mitigate the loss.  *See* Denial Letter attached as Exhibit 3.

22.   Although Defendants wrongfully denied her claim, Plaintiff retained Trinity Roofing Company ("Trinity") as a contractor.  Trinity then retained Biocheck Corporation who completed a property inspection on June 28, 2018 in preparation for Trinity to start repairs.  *See* Biocheck Corporation Report attached as Exhibit 4.  In its July 3, 2018 report, Biocheck noted that the source of the water loss had been repaired/corrected.  Furthermore, Biocheck confirmed moisture migration from the laundry room sink into the living room caused the wood floor to buckle.  *See* Exhibit 4.

23.  On July 5, 2018, Plaintiff retained Greg Cannon, Public Adjuster, to assist in her claim with Defendants.

24.  Although Defendants maintained that the water loss and resulting damage was excluded under the continued seepage provision, Mr. Cannon confirmed that Plaintiff could not have known about the underlying water damages and they were not a product of continued seepage.

25.  On July 16, 2018, Plaintiff filed a complaint with the Oklahoma Insurance Department attempting to reopen the claims process that Defendants had wrongfully closed.  *See* Oklahoma Insurance Department Complaint attached as Exhibit 5.

26.  On July 16, 2018, Plaintiff entered into a contract with Trinity to repair the damages.  Trinity's estimate and invoice for full repair of the covered damages to the mud room, laundry room, living room, walls, and flooring totaled $22,056.12. *See* Trinity Estimate attached as Exhibit 6.  Plaintiff was forced to pay this entire amount out-of-pocket.

27.  On August 7, 2018, Mr. Cannon requested Defendants re-inspect the property and additional damages to the subfloor discovered during the construction by Trinity.  Defendants declined this request and stated no re-inspection would take place and it was standing on its denial. *See* Exhibit 2.

28.  Since Plaintiff's covered property was recently sold, she was potentially liable to the buyer for the hidden and unknown damages caused by the sink overflow and had to commence repairs prior to the final outcome of this

claims process.

29.    Plaintiff also was responsible for fees and costs associated with the buyer of

her home having to relocate during the construction process.  Plaintiff paid

costs for supplemental housing, furniture movers, and storage unit fees

during  the  time  repairs  were  being  made  to  the  property.    *See*

invoices/receipts attached as Exhibit 7.

30.    As a result of Defendants' wrongful denial of her claim, Plaintiff was forced

to retain legal counsel.  To date, Defendants have paid $0.00 for the loss.

## FIRST CAUSE OF ACTION
## BREACH OF CONTRACT

31.    Plaintiff adopts and incorporates by reference paragraphs 1 through 30 above

as if fully plead herein, and for further claims against the Defendants alleges

as follows:

32.    Plaintiff is a member (subscriber) with AAA and Plaintiff entered into a

contract for insurance with Defendants to provide coverage for the dwelling,

other structures and personal property.

33.    At all times material hereto, the policy of insurance, Policy No. HO5412164,

was in full force and effect.

34.    Plaintiff provided Defendants with timely and proper notice of this claim.

35.    Defendants improperly denied Plaintiffs claim based, among other things, on

an inadequate investigation which included a single adjuster's conclusory

finding that Plaintiff's damages resulted from "constant and repeated seepage

8

and leakage which was not hidden or unknown" and were excluded; wrongful application of the policy provisions to hidden and unknown water damages; baseless contention that the single incident of a sink overflowing with water was "constant and repeated seepage and leakage" and/or the extent of the resulting damage was "not hidden or unknown;" and/or Defendants' refusal to consider all evidence presented by Plaintiff and Plaintiff's pubic adjuster.

36.    As a result of Defendants' denial of the claim, Plaintiff incurred costs for remediation/mitigation for (i) $22,056.12 to Trinity, and (ii) $4,529.01 for out-of-pocket/ALE expenses. *See* Exhibits 6 & 7.

37.    Plaintiff has complied with the terms and conditions and all conditions precedent under the Policy of insurance.

38.    Defendants operate as part of a reciprocal insurance exchange; therefore, Defendants each have contractual obligations under the terms and conditions of the Policy.

39.    By failing to fully indemnify Plaintiff for losses covered by the Policy, Defendants have breached their contractual obligations under the terms and conditions of the Policy.

40.    Defendants' conduct is the proximate cause of Plaintiff's damages.

41.    As a result of Defendants' breach of contract, Plaintiff has sustained financial losses and mental and emotional distress.

42.    Pursuant to 12 O.S. § 3629(B), Plaintiff is entitled to attorneys' fees, costs,

and statutory interest at the rate of 15% per annum.

43.   As a result of Defendants' breach of contract, Plaintiff has been damaged in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of attorneys' fees, costs, and all interest allowed by law.

**SECOND CAUSE OF ACTION**
**BAD FAITH**

44.   Plaintiff adopts and incorporates by reference paragraphs 1 through 43 above as if fully plead herein, and for further claims against Defendants, alleges as follows:

45.   Defendants owed a duty to Plaintiff to deal fairly and act in good faith.

46.   Defendants failed to retain qualified professionals to properly evaluate the Plaintiff's loss and properly apply Policy coverages.

47.   Defendants have implemented business practices, including refusing to pay for certain damages despite knowing the scope of loss requires such repairs, to maximize its profit and underpay its insureds that pay expensive premiums and deserve indemnity pursuant to their policy.

48.   Defendants breached the duty to deal fairly and act in good faith by engaging in the following acts and omissions:

   a.   failing to timely and properly investigate Plaintiff's claim;

   b.   failing to evaluate and/or pay the full and fair amount for the property damage sustained by Plaintiff from water damage on March 29, 2018, in accordance with the terms and conditions of the Policy;

10

    c. wrongfully denying all of the Plaintiff's claim under the guise that the damages were not caused by the single event on or about March 29, 2018, but rather were the result of "constant and repeated seepage and leakage which was not hidden or unknown."

    d. purposefully, wrongfully and repeatedly withholding benefits and coverages due to the Plaintiff under the Policy;

    e. forcing Plaintiff to retain counsel to recover all insurance benefits she is entitled to under the Policy;

    f. failing to perform a fair and objective investigation of Plaintiff's damages and engaging in an outcome-oriented investigation of Plaintiff's claim designed to deny and/or wrongfully reduce the amount paid to Plaintiff for her claim; and/or

    g. knowingly and intentionally failing to engage in proper claims handling practices and/or best practices.

49.    Defendants' obligations to the Plaintiff arise from both express written terms under the Policy, and the Oklahoma Insurance Code as well as implied obligations under Oklahoma law.

50.    Defendants' conduct is a material breach of the terms and conditions of the insurance contract entered into with the Plaintiff and constitutes bad faith.

51.    Despite Plaintiff and Plaintiff's representatives identifying hidden and unknown water damages resulting from the sink overflowing with water on one occasion, Defendants failed to pay for all of the damages covered under

the Policy and failed to make every effort to investigate Plaintiff's claim for direct physical damage caused by the covered event.

52.  Defendants owe for all direct physical damages to Plaintiff's property caused by a peril not otherwise limited or excluded by the express terms of the Policy.

53.  Defendants ignored direct physical evidence and damages covered by the Policy for financial gain.

54.  As a direct and proximate result of Defendants' unfair claims handling conduct, Plaintiff's claim was unnecessarily delayed, inadequately investigated, and wrongfully underpaid. Said actions resulted in additional profits and a financial premium to Defendants.

55.  Defendants engage in a profit-sharing program that provides financial incentives to its employees to underpay and/or deny its insureds' claims.

56.  As a result of the Defendants' conduct the Plaintiff has sustained mental and emotional distress, including deprivation of proceeds rightfully belonging to her, anger, stress, worry, physical, and emotional suffering, and has been damaged in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of attorneys' fees, costs and interest.

57.  The conduct of Defendants was intentional, willful, malicious, and in reckless disregard to the rights of Plaintiff, and said conduct is sufficiently egregious in nature to warrant the imposition of punitive damages.

58.  The amount of punitive damages sought to be recovered is in excess of the

amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code.

59.   Plaintiff further alleges Defendants profited from increased financial benefits and ill-gotten gains as a direct result of the intentional and wrongful conduct described above, which resulted in further damage to the Plaintiff.

### PRAYER FOR RELIEF

**WHEREFORE**, premises considered, Plaintiff prays for judgment against Defendants, CSAA Insurance Exchange, CSAA FIRE AND CASUALTY INSURANCE COMPANY d/b/a AAA FIRE & CASUALTY INSURANCE COMPANY, and AUTOMOBILE CLUB OF OKLAHOMA, d/b/a AAA OKLAHOMA, as follows:

a.   Payment of all contractual benefits for all coverages afforded to Plaintiff under the Policy of insurance for damage to the dwelling, other structures and personal property caused by the event on or about March 29, 2018, together with interest on all amounts due;

b.   Actual and punitive damages each in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00);

c.   Disgorgement of the increased financial benefits derived by Defendants as a direct result of Defendants' wrongful or intentional, willful, malicious and/or reckless conduct;

d.   The amount of punitive damages sought to be recovered for Plaintiff's Bad Faith/Breach of the Common Law Duty of Good Faith and Fair

Dealing action is in excess of the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code; and

e. Pre-judgment and post-judgment interest, costs, statutory attorneys' fees, and any other relief deemed equitable and just.

Respectfully submitted,

J. DREW HOUGHTON, OBA # 18080
MERLIN LAW GROUP
One Leadership Square
211 N. Robinson, Suite 210
Oklahoma City, OK 73102
Phone: (405) 218-1105
Fax: (405) 218-1106
dhoughton@merlinlawgroup.com

**ATTORNEY FOR PLAINTIFF**

**ATTORNEYS' LIEN CLAIMED**
**JURY TRIAL DEMANDED**

14

 **Insurance**

P.O. Box 24523
Oakland, CA 94623-1523

Phone    888.335.2722
Fax       877.548.1610

July 05, 2018

LOIS FAY JENKINS
27109 WHITE PLAINS WAY
LEESBURG, FL 34748-1318

Re:   Insured:           LOIS FAY JENKINS
      Claim No.:         1002-68-2784
      Date of Loss:      March 29, 2018

Dear LOIS FAY JENKINS:

This letter is a follow up to our conversation today.

Attached is a copy of the certified policy as you requested. I have also placed a hard copy in the mail to you.

Sincerely,

*Danielle Perez* on behalf of *Rich Turnbull*

Rich Turnbull
Claims Representative
Phone: 405-493-7014



EXHIBIT

1

This page is intentionally left blank



# DECLARATION

I certify, that the attached **AAA OKLAHOMA HOMEOWNERS 5 – COMPREHENSIVE FORM (AMENDATORY), NO LIABILITY FOR HOME DAYCARE, SPECIAL PROVISIONS – OKLAHOMA, VICIOUS DOG LIABILITY EXCLUSION, LENDER'S LOSS PAYABLE ENDORSEMENT – FORM 438BFUNS, HOMEOWNERS ENHANCEMENT (FORM HO-5), PERSONAL INJURY, PREMISES ALARM/FIRE PROTECTION SYSTEM, WINDSTORM/HAIL PERCENTAGE DEDUCTIBLE, NAME CHANGE ENDORSEMENT, MORTGAGE PAYMENT PROTECTION, WATER BACK UP & SUMP DISCHARGE/OVERFLOW, IDENTITY FRAUD EXPENSE COVERAGE, CREDIT CARD/ELECTRONIC FUND TRANSFER CARD/ACCESS DEVICE, FORGERY & COUNTERFEIT MONEY COVERAGE, ASSURANCE + TM ENDORSEMENT & DECLARATIONS PAGE** pertain to policy **HO5 - 004012164**, for named insured **LOIS FAY JENKINS**, encompassing the policy period applicable to a loss on **03-29-18**. This policy booklet, declaration of coverage and endorsements, are true policy coverage forms of CSAA Fire & Casualty Insurance Company (formerly known as AAA Fire & Casualty Insurance Company).

Norma Ortega

**Norma Ortega**
**Custodian of Records**
**CSAA Fire & Casualty Insurance Company**

**July 3, 2018**

Custodian of Records, Legal Division
CSAA Insurance Group
3055 Oak Road, Mailstop W280, Walnut Creek, CA 94597

custodianofrecords@csaa.com
p: 925.279.3119    f: 877.837.8124

 

**AAA Fire & Casualty Insurance Company, P.O. Box 24524 Oakland, CA 94623-1524, (800) 207-3618**

**POLICY NUMBER:** HO5 - 004012164
**INSURED NAME:** LOIS FAY JENKINS
**AGENT NUMBER:** 044 - 100718

## Lender's Loss Payable Endorsement – Form 438BFUNS

Form 438BFUNS
(Rev. May 1, 1942)

1   Loss or damage, if any, under this policy, shall be paid **to the Payee named on the first page of this policy,** its successors and assigns, hereinafter referred to as "the LENDER:, in whatever form or capacity its interests may appear and whether said interest be vested in said Lender in its individual or in its disclosed or undisclosed fiduciary or representative capacity, or otherwise, or vested in a nominee or trustee of said Lender.

2   The insurance under this policy, or any rider or endorsement attached thereto, as to the interest only of the Lender, its successors and assigns, shall not be invalidated nor suspended: (a) by any error, omission, or change respecting the ownership, description, possession, or location of the subject of the insurance or the interest therein, or the title thereto; (b) by the commencement of foreclosure proceedings or the giving of notice of sale of any of the property covered by this policy by virtue of any mortgage or trust deed; (c) by any breach of warranty, act, omission, neglect, or non-compliance with any of the provisions of this policy, including any and all riders now or hereafter attached thereto, by the named insured, the borrower, mortgagor, trustor, vendee, owner, tenant, warehouseman, custodian, occupant, or by the agents of either or any of them or by the happening of any event permitted by them or either of them, or their agents, or which they failed to prevent, whether occurring before or after the attachment of this endorsement, or whether before or after a loss, which under the provisions of this policy of insurance or of any rider or endorsement attached thereto would invalidate or suspend the insurance as to the named insured, excluding herefrom, however, any acts or omissions of the Lender while exercising active control and management of the property.

3   In the event of failure of the insured to pay premium or additional premium which shall be or become due under the terms of this policy or on account of any change in occupancy or increase in hazard not permitted by this policy, this Company agrees to give written notice to the Lender of such non-payment of premium after sixty (60) days from and within one hundred and twenty (120) days after due date of such premium and it is a condition of the continuance of the rights of the Lender hereunder that the Lender when so notified in writing by this Company of the failure of the insured to pay such premium shall pay or cause to be paid the premium due within ten (10) days following receipt of the Company's demand in writing therefor. If the Lender shall decline to pay said premium or additional premium, the rights of the Lender under this Lender's Loss Payable Endorsement shall not be terminated before ten (10) days after receipt of said written notice by the Lender.

4   Whenever this Company shall pay to the Lender any sum for loss or damage under this policy and shall claim that as to the insured no liability therefor exists, this Company, at its option, may pay to the Lender the whole principal sum and interest and other indebtedness due or to become due from the insured, whether secured or unsecured (with refund of all interest not accrued), and this Company, to the extent of such payment, shall thereupon receive a full assignment and transfer, without recourse, of the debt and all rights, securities held as collateral thereto.

5   If there be other insurance upon the within the described property, this Company shall be liable under this policy as to the Lender for the proportion of such loss or damage that the sum hereby insured bears to the entire insurance similar character on said property under policies held by, payable to and expressly consented to by the Lender. Any Contribution Clause included in any Fallen Building Clause Waiver or any Extended Coverage Endorsement attached to this contract of insurance is hereby nullified, and also any Contribution Clause in any other endorsement or rider attached to this contract of insurance is hereby nullified except Contribution Clauses for the compliance with which the insured has received reduction in the rate charged or has received extension of the coverage to include hazards other than fire and compliance with such Contribution Clause is made a part of the consideration for insuring such other hazards. The Lender upon the payment to it of the full amount of its claim, will subrogate this Company (pro rata with all other insures contributing to said payment) to all of the Lender's rights of contribution under said other insurance.

6   This company reserves the right to cancel this policy at any time, but in such case this policy shall continue in force for thirty (30) days after written notice of such cancellation is sent and shall cease.

7   This policy shall remain in full force and effect as to the interest of the Lender for a period of ten (10) days after its expiration unless an acceptable policy in renewal thereof with loss thereunder payable to the Lender in accordance with the terms of this Lender's Loss Payable Endorsement, shall have been issued by some insurance company and accepted by the Lender.

8   Should legal title to and beneficial ownership of any of the property covered under this policy become vested in the Lender or its agents, insurance under this policy shall continue for the term thereof for the benefit of the Lender, but in such event, any privileges granted by this Lender's Loss Payable Endorsement which are not also granted the insured under the terms and conditions of this policy and/or under other riders or endorsements attached thereto shall not apply to the insurance hereunder as respects such property.

9   All notices herein provided to be given by the Company to the Lender in connection with this policy and this Lender's Loss Payable Endorsement shall be mailed to or delivered to the Lender at its office or branch described on the first page of the policy.

INSURED COPY

 **Insurance**

**AAA Fire & Casualty Insurance Company, P.O. Box 24524 Oakland, CA 94623-1524, (800) 207-3618**



| | |
|---|---|
| **POLICY NUMBER:** HO5 - 004012164 | **HOMEOWNERS** |
| **INSURED NAME:** LOIS FAY JENKINS | **HW 24 82 05 06** |
| **AGENT NUMBER:** 044 - 100718 | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# PERSONAL INJURY

### DEFINITIONS

The following definitions are added:

"Personal injury" means injury arising out of one or more of the following offenses, but only if the offense was committed during the policy period:

1. False arrest, detention or imprisonment;

2. Malicious prosecution;

3. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

4. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

5. Oral or written publication of material that violates a person's right of privacy.

### SECTION II - LIABILITY COVERAGES

#### A. Coverage E - Personal Liability

The following is added to Coverage **E** - Personal Liability:

#### Personal Injury Coverage

If a claim is made or suit is brought against an "insured" for damages resulting from an offense, defined under "personal injury", to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and

2. Provide a defense at our expense by counsel of our choice, even if the claim is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the offense has been exhausted by payment of a judgment or settlement.

### SECTION II - EXCLUSIONS

With respect to the coverage provided by this endorsement, **Section II - Exclusions** is deleted and replaced by the following:

This insurance does not apply to:

1. "Personal Injury":

   a. Caused by or at the direction of an "insured" with the knowledge that the act would violate the rights of another and would inflict "personal injury";

   b. Arising out of oral or written publication of material, if done by or at the direction of an "insured" with knowledge of its falsity;

   c. Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

   d. Arising out of a criminal act committed by or at the direction of an "insured";

   e. Arising out of liability assumed by an "insured" under any contract or agreement except any indemnity obligation assumed by an "insured" under a written contract directly relating to the ownership maintenance or use of the premises;

   f. Sustained by any person as a result of an offense directly or indirectly related to the employment of this person by an "insured";

   g. Arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured". This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".

      This exclusion does not apply to:

      (1) The rental or holding for rental of an "insured location";

         (a) On an occasional basis if used only as a residence;

         (b) In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

(c) In part, as an office, school, studio or private garage; and

(2) An "insured" under the age of 21 years involved in a part-time or occasional, self-employed "business" with no employees;

h. Arising out of civic or public activities performed for pay by an "insured";

i. To you or an "insured" as defined under Definition **7.a.** or **b.**;

This exclusion also applies to any claim made or suit brought against you or an "insured":

(1) To repay; or

(2) Share damages with; or

Another person who may be obligated to pay damages because of "personal injury" to an "insured"; or

j. Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants or "contaminants" at any time.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

k. Arising directly or indirectly, in whole or in part, out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi", wet or dry rot, or bacteria.

2. Any loss, cost or expense arising out of any:

a. Request, demand or order that an "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants, "fungi", wet or dry rot, or bacteria; or

b. Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, clean up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants, "fungi", wet or dry rot, or bacteria.

## SECTION II - ADDITIONAL COVERAGES

With respect to the coverage provided by this endorsement, Paragraph **D. Loss Assessment** is deleted and replaced by the following:

### D. Loss Assessment

We will pay up to $1000 ($2,500 in Form **HO 00 05**) for your share of loss assessment charged against you, as an owner or tenant of the "residence premises", during the policy period by a corporation or association of property owners, when the assessment is made as a result of "personal injury" not excluded under this endorsement.

We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

Regardless of the number of assessments, the limit of $1000 ($2,500 in Form **HO 00 05**) is the most we will pay for loss arising out of "personal injury".

## SECTION II – CONDITIONS

With respect to the coverage provided by this endorsement, Section II - Condition **I.** Policy Period does not apply and Conditions **A. Limit Of Liability, B. Severability Of Insurance** and **C. Duties After "Occurrence"** are deleted and replaced by the following:

### A. Limit Of Liability

Our total liability under "Personal Injury" Coverage for all damages resulting from any one offense will not be more than the limit of liability shown in the Declarations for Coverage **E**. This limit is the same regardless of the number of "insureds", claims made or suits brought.

### B. Severability Of Insurance

This insurance applies separately to each "insured". This condition will not increase our limit of liability for any one offense.

### C. Duties After Offense

In the event of a covered offense, you or another "insured" will perform the following duties that apply. We have no duty to provide coverage under this policy if your failure to comply with the following duties is prejudicial to us. You will help us by seeing that these duties are performed:

1. Give written notice to us or our agent as soon as is practical, which sets forth:

a. The identity of the policy and "named insured";

b. Reasonably available information on the time, place and circumstances of the offense; and

c. Names and addresses of any claimants and witnesses;

2. Cooperate with us in the investigation, settlement or defense of any claim or suit;

3. Promptly forward to us every notice, demand, summons or other process relating to the offense;

Includes copyrighted material of Insurance Services Office, Inc., With Its Permission, © ISO Properties, Inc., 2001

HW 24 82 05 06

INSURED COPY



4. At our request, help us:

   **a.** To make settlement;

   **b.** To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

   **c.** With the conduct of suits and attend hearings and trials; and

   **d.** To secure and give evidence and obtain the attendance of witnesses;

5. No "insured" shall, except at such "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "personal injury".

All other provisions of this policy apply.

Includes copyrighted material of Insurance Services Office, Inc., With Its Permission, © ISO Properties, Inc., 2001

INSURED COPY

 **AAA Insurance**

**AAA Fire & Casualty Insurance Company, P.O. Box 24524 Oakland, CA 94623-1524, (800) 207-3618**

**POLICY NUMBER:** HO5 - 004012164
**INSURED NAME:** LOIS FAY JENKINS
**AGENT NUMBER:** 044 - 100718

**HOMEOWNERS**
**HW 09 15 03 08**

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# VICIOUS DOGS AND DOGS WITH PRIOR BITE HISTORY LIABILITY EXCLUSION

For use with all policy forms and Personal Umbrella Liability Endorsement

**Exclusion**

We do not cover;

Any "bodily injury" or "property damage" caused by a "vicious dog" or "dog with prior bite history," occurring at an "insured location" or any other location. This exclusion applies regardless of the cause of the loss, whether other causes of the loss acted concurrently or in any sequence with the excluded event to produce the loss, and regardless whether the claim against an "insured person" arises out of;

    a. the ownership, custody or care of the dog by the "insured person", or by any other person whether or not that person is a resident, or tenant at the "insured location";
    b. negligent supervision by an "insured person" of any person or animal;
    c. premises liability for allowing a dog on any premises; or
    d. any liability statutorily imposed on any "insured person".

This exclusion shall apply to this policy or any continuation, renewal, or replacement of this policy by the "insured", or the reinstatement within 30 days of any lapse thereof.

**Definitions**

With respects to this exclusion, the following words and phrases are defined as follows:

    1. "Vicious dogs" means a dog with ancestry properly classified as any of the following breeds of dogs:

    a. Chow
    b. Doberman
    c. Pit Bull or Pit Bull mix
    d. Presa Canario
    e. Rottweiler
    f. Wolf Hybrid or Wolf Dog
    g. Akita

    2. "Dogs with prior bite history" means any dog that has caused "bodily injury", whether or not covered by insurance, on one or more occasions prior to the date of the loss for which coverage is sought.

 **Insurance**

**AAA Fire & Casualty Insurance Company, P.O. Box 24524 Oakland, CA 94623-1524, (800) 207-3618**



**POLICY NUMBER:** HO5 - 004012164
**INSURED NAME:** LOIS FAY JENKINS
**AGENT NUMBER:** 044 - 100718

**HOMEOWNERS**
**HW 09 00 12 09**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
# HOMEOWNERS ENHANCEMENT (FORM HO-5)

### 1. EXTENDED REPLACEMENT COST COVERAGE

To the extent that coverage is provided, we agree to provide an additional amount of insurance in accordance with the following provisions:

A. If you have:

  1. Allowed us to adjust the Coverage A limit of liability and the premium in accordance with:

      a. The property evaluations we make; and

      b. Any increases in inflation; and

  2. Notified us, within 30 days of completion, of any improvements, alterations or additions to the building insured under Coverage A which increase the replacement cost of the building by 5% or more;

  The provisions of this endorsement will apply after a loss, provided you elect to repair or replace the damaged building.

B. If there is a loss to the building insured under Coverage A that exceeds the Coverage A limit of liability shown in the Declarations:

  1. We will provide an additional amount of insurance, up to 150% of the limit of liability applying to the dwelling as indicated on the Declarations page; and

  2. We will increase, by the same percentage applied to Coverage A, the limits of liability for Coverages B, C, and D. However, we will do this only if the Coverage A limit of liability is increased under Paragraph B.1. as a result of a Coverage A loss.

  3. We will adjust the policy premium from the time of loss for the remainder of the policy term based on the increased limits of Coverage B, C and D liability; and

  4. For the purposes of settling that loss only, Section I - Condition C. Loss Settlement Paragraph 2. is deleted and replaced by Paragraphs 2., 3., and 4. as follows:

      2. The building insured under Coverage A or B at replacement cost without deduction for depreciation. We will pay no more than the smallest of the following amounts:

          a. The replacement cost of that part of the building damaged with material of like kind and quality and for like use;

      b. The necessary amount actually spent to repair or replace the damaged building; or

      c. The limit of liability under this policy that applies to the building, increased in accordance with Paragraphs B.1. and B.2. of this endorsement.

      If the building is rebuilt at a new premises, the cost described in a. above is limited to the cost which would have been incurred if the building had been rebuilt at the original premises.

      3. We will pay no more than the actual cash value of the damage until actual repair or replacement is complete.

      4. You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss to the building on an actual cash value basis. You may then make claim for any additional liability on a replacement cost basis, provided you notify us of your intent to do so within 180 days after the date of loss.

  All other provisions of this policy apply.

### 2. PERSONAL PROPERTY REPLACEMENT COST COVERAGE

A. Eligible Property

  1. Covered losses to the following property are settled at replacement cost at the time of the loss:

      a. Coverage C; and

      b. If covered in this policy:

          (1) Awnings, outdoor antennas and outdoor equipment; and

          (2) Carpeting and household appliances;

          whether or not attached to buildings.

  2. This method of loss settlement will also apply to the following articles or classes of property if they are separately described and specifically insured in this policy and not subject to agreed value loss settlement:

      a. Jewelry;

      b. Furs and garments:

          (1) Trimmed with fur; or

          (2) Consisting principally of fur;

c. Cameras, projection machines, films and related articles of equipment;

d. Musical equipment and related articles of equipment;

e. Silverware, silver-plated ware, goldware, gold-plated ware and pewterware, but excluding:

(1) Pens or pencils;

(2) Flasks;

(2) Smoking implements; or

(3) Jewelry; and

f. Golfer's equipment meaning golf clubs, golf clothing and golf equipment.

Personal Property Replacement Cost loss settlement will not apply to other classes of property separately described and specifically insured.

**B. Ineligible Property**

Property listed below is not eligible for replacement cost loss settlement. Any loss will be settled at actual cash value at the time of loss but not more than the amount required to repair or replace.

1. Antiques, fine arts, paintings and similar articles of rarity or antiquity which cannot be replaced.

2. Memorabilia, souvenirs, collectors items and similar articles whose age or history contribute to their value.

3. Articles not maintained in good or workable condition.

4. Articles that are outdated or obsolete and are stored or not being used.

**C. Replacement Cost Loss Settlement Condition**

The following loss settlement condition applies to all property described in **A.** above:

1. We will pay no more than the least of the following amounts:

a. Replacement cost at the time of loss without deduction for depreciation;

b. The full cost of repair at the time of loss;

c. The limit of liability that applies to Coverage **C**, if applicable;

d. Any applicable special limits of liability stated in this policy; or

e. For loss to any item described in **A.2.a. - f.** above, the limit of liability that applies to the item.

2. We will pay no more than the actual cash value for the loss to property described in 2A, unless and until the repair or replacement of the property is complete.

3. You may make a claim for loss on an actual cash value basis and then make claim for any additional liability in accordance with this endorsement provided you notify us of your intent to do so within 180 days after the date of loss.

**3. SECTION I - PROPERTY COVERAGES**

**C. Coverage C - Personal Property**

**3. Special Limits Of Liability e.** is deleted and replaced by the following:

**e.** $5,000 for loss by theft, misplacing or losing of jewelry, watches, furs, precious and semiprecious stones.

All other provisions of this policy apply.

HW 09 00 12 09
INSURED COPY

 

**AAA Fire & Casualty Insurance Company, P.O. Box 24524 Oakland, CA 94623-1524, (800) 207-3618**

POLICY NUMBER: HO5 - 004012164
INSURED NAME:  LOIS FAY JENKINS
AGENT NUMBER:  044 - 100718

**HOMEOWNERS**
**HW 01 35 04 07**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# SPECIAL PROVISIONS - OKLAHOMA

**SECTION I - EXCLUSIONS**
**FORMS HO 00 03 AND HO 00 05**

The following Exclusion is added:

When a loss occurs to a roof covered by this policy, there is no coverage for the tear-off, removal or disposal of debris, or replacement of any layer of roofing material other than the outermost layer of roof material.

If the roof contains more than one layer of roof covering, this endorsement limits coverage to only the outermost roof surface.

Your policy will not provide coverage for the removal or replacement of any roof decking or underlying roof coverings, materials or decking that have been over-laid or covered by other roof coverings or materials.

There is no coverage under your policy for the tear-off and/or removal of any additional layers when the removal of additional layers becomes necessary to ensure that there is a nailable surface (or a surface to which a new roof may be adequately affixed) for the material installed to replace the tom-off outermost layer of roofing material.

**SECTION I - CONDITIONS**
**FORMS HO 00 03 AND HO 00 05**

**E. Appraisal** is deleted and replaced by the following:

**E. Appraisal**

If you and we fail to agree on the amount of loss, either party may make written demand for an appraisal of the loss. In this event, only the party which demanded the appraisal will be bound by the results of that appraisal. Each party will choose a competent and impartial appraiser within 20 days after the written demand has been made. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, then, at the request of either you or us, after notice of hearing to the nonrequesting party by certified mail, the umpire shall be selected by a judge of a district court in the county where the loss occurred.

The appraisers will separately set the amount of loss. If the appraisers submit a written report of agreement to us, the amount agreed upon will be the amount of loss and will be binding on that party which demanded the appraisal. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss and will be binding on that party which demanded the appraisal.

Each party will:

1. Pay its own appraiser; and
2. Bear the expenses of the appraisal and umpire equally.

**I. Loss Payment** is deleted and replaced by the following:

**I. Loss Payment**

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment.

Loss will be payable:

1. Within 60 days after we reach an agreement with you or there is a filing of an appraisal award with us; or
2. Within 30 days after there is an entry of a final judgment.

The following Condition is added:

**S. Our Duties After Loss**

It shall be our duty, after receiving a proof of loss, to submit a written offer of settlement or rejection of the claim, or notice of the need for more time to investigate the claim, to you within forty-five (45) days of receipt of the proof of loss.

(This is Paragraph **R.** In Form HO 00 04.)

All other provisions of this policy apply.

 Includes copyrighted material of Insurance Services Offices, Inc., used with its permission.

INSURED COPY



**AAA Fire & Casualty Insurance Company, P.O. Box 24524 Oakland, CA 94623-1524, (800) 207-3618**



POLICY NUMBER:   HO5 - 004012164
INSURED NAME:    LOIS FAY JENKINS
AGENT NUMBER:    044 - 100718

**HOMEOWNERS**
**HW A5 00 12 09**

# HOMEOWNERS HO 00 05 -COMPREHENSIVE FORM

## AMENDATORY ENDORSEMENT

### DEFINITIONS

Paragraph **B.1.b.(3)** is deleted and replaced by the following:

(3) Watercraft means a craft principally designed to be propelled on or in water by wind, engine power or electric motor; it does not include any craft designed for use on snow or ice; and

The following is added to paragraph **a.** of the definition of "Insured":

A domestic partner of the named insured. (For purposes of this definition "domestic partner" means an adult who is not related to the named insured by blood, who has continually lived with the named insured for at least six months and plans to do so permanently, and is mutually responsible along with the named insured for their common welfare, and who maintains no other domestic partnership or legally recognized marriage.)

When used in this policy, the following words, either with or without quotation marks, will have the following meanings:

"Contamination" and "Contaminants" collectively means impairment or impurity due to either an accidental or intentional mixture or contact with a foreign substance, including, but not limited to, biological, chemical, or toxic agents.

"Fungus" or "Fungi" means:

a. any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by "fungi".

b. Under Section II, this does not include any "fungi" that are, or are contained in, a product intended for human consumption.

"Water" means water (H$_2$O) alone, including moisture, steam or humidity, whether frozen or not or natural or artificial including any liquid or sludge which contains "water", whether or not combined with any other chemicals or impurities.

### DEDUCTIBLE

This section is modified to read as follows:

### DEDUCTIBLE

Unless otherwise noted in this policy, the following deductible provision applies:

Subject to the policy limits that apply, we will pay only that part of the total of all loss payable under Section I that exceeds the deductible amount shown in the Declarations.

This deductible applies separately to each loss.

### SECTION I - PROPERTY COVERAGES

**C. Coverage C - Personal Property**

Paragraphs **a.** and **b.** of **3. Special Limits Of Liability** are deleted and replaced by the following:

a. $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum other than platinumware, scrip, stored value cards, smart cards, negotiable and nonnegotiable coins and medals and collections of all such property.

b. $1,500 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets, stamps and stamp collections. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

This limit includes the cost to research, replace or restore the information from the lost or damaged material.

The following are added to **3. Special Limits of Liability:**

l. $10,000 in the aggregate for theft of rugs, including, but not limited to, any handwoven silk or wool rug, carpet, tapestry, wallhanging or other similar article whose principal value is determined by its color, design, quality of wool or silk, quality of weaving, condition or age; the special limit of liability is subject to a maximum of $5,000 per item.

m. $2,500 on trading cards and comic books including any of these that are part of a collection.

## E. Additional Coverages

The following provision is added to paragraph **a.** of **1. Debris Removal:**

However, we will not pay any expenses incurred by you or anyone acting on your behalf to:

(1) extract pollutants from land or "water"; or

(2) remove, restore or replace land or "water" due to the actual or alleged presence of Contamination, Contaminants or Pollutants.

(3) comply with any ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants or "contaminants" in or on any covered building or other structure, and on land or water.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

Paragraph **e.** of **3. Trees, Shrubs And Other Plants** is deleted and replaced by the following:

**e.** Impact from a vehicle, not owned or operated by a resident of the "residence premises";

In Paragraphs **a.** and **b.** of **7. Loss Assessment**, the amount we will pay up to is changed to "$2,500".

Paragraph **b.(5)** of **8. Collapse** is deleted and replaced by the following:

(5) Weight of rain, ice or snow which collects on a roof; or

The following is added to paragraph **f. Vehicles** of **10. Landlord's Furnishings:**

This peril means impact from a vehicle, but not including damage to the vehicle itself.

Paragraph **k.(2)(d)** of **10. Landlord's Furnishings** is deleted and replaced by the following:

(d) Caused by or consisting of mold, "fungi" or wet rot unless hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

Paragraph **c.(2)** of **11. Ordinance Or Law** is deleted and replaced by the following:

(2) The costs to comply with any ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants or "contaminants" in or on any covered building or other structure, and or on land or water.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

The following are added to **E. Additional Coverages:**

### Refrigerated Property

We insure for up to $500, covered property stored in freezers or refrigerators on the "residence premises" for direct loss caused by:

**a.** "loss of power" to the refrigeration unit. Loss of power must be caused by damage to:

(1) Generating equipment; or

(2) Transmitting equipment; or

**b.** Mechanical failure of the unit which stores the property.

"Loss of power" means the complete or partial interruption of electric power due to conditions beyond an "insured's" control.

Coverage will apply only if you have maintained

the refrigeration unit in proper working condition immediately prior to the loss.

This coverage does not increase the limit of liability for Coverage C.

The Power Failure exclusion does not apply to this coverage.

### Special Deductible

The following will replace any other deductible provision in this policy with respect to loss covered under this Additional Coverage.

We will pay only that part of the total of all loss payable that exceeds $100. No other deductible applies to this coverage.

### Lock Replacement

We will pay your reasonable and necessary expenses to replace exterior door locks at the "residence premises", if an "insured's" keys are stolen.

No deductible applies to his coverage.

### Arson Reward

We will pay $5,000 for information which leads to an arson conviction in connection with a fire loss to property covered by this policy. This coverage may increase the limit otherwise applicable. However, the $5,000 limit shall not be increased regardless of the number of persons providing the information.

INSURED COPY



**"Fungi", Wet Or Dry Rot, Or Bacteria**

a. $5,000 is the most we will pay regardless of the number of "occurrences" for:

  (1) The total of all loss payable under Section I - Property Coverages caused by or consisting of "fungi", wet or dry rot, or bacteria;

  (2) The cost to remove "fungi", wet or dry rot, or bacteria from property covered under Section I - Property Coverages;

  (3) The cost to tear out and replace any part of the building or other covered property as needed to gain access to the "fungi", wet or dry rot, or bacteria; and

  (4) The cost of testing of air or property to confirm the absence, presence or level of "fungi", wet or dry rot, or bacteria whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be provided only to the extent that there is a reason to believe that there is the presence of "fungi", wet or dry rot, or bacteria.

b. The coverage described in paragraph **a.** above only applies when such loss or costs are a result of a Peril Insured Against that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at and after the time the Peril Insured Against occurred.

c. The amount of $5,000 for this coverage is the most we will pay for the total of all loss or costs payable under this Additional Coverage regardless of the:

  (1) Number of locations insured under this endorsement; or

  (2) Number of occurrences.

d. If there is a covered loss or damage to covered property that is not caused by, or does not consist of, in whole or in part, by "fungi", wet or dry rot, or bacteria, the limitations of this Additional Coverage do not apply. If "fungi", wet or dry rot, or bacteria causes an increase in the loss covered by a Peril Insured Against, coverage for such increase in loss is limited to $5,000.

This coverage does not increase the limit of liability applying to the damaged covered property.

**Flood Emergency Assistance**

We will pay up to $3,000 of reasonable and necessary additional living expenses actually incurred by you within four weeks of a loss that is excluded by Section I Exclusions, **A.3** "Water"

Damage if the "residence premises" is uninhabitable during that period and the additional living expense is a result of such excluded loss.

No deductible applies to this coverage.

OTHER THAN AS PROVIDED BY ADDITIONAL COVERAGE 16, THIS POLICY DOES NOT PROVIDE FLOOD INSURANCE.

**SECTION I - PERILS INSURED AGAINST**

**A.** Under Coverages **A, B** and **C**

The first paragraph of **2.b.** is deleted and replaced by:

  b. Freezing, thawing, pressure or weight of water, snow or ice, whether driven by wind or not, to a:

Paragraph **2.d** is deleted and replaced by:

  d. Constant or repeated seepage or leakage of "water" or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of "water" or the presence or condensation of humidity, moisture or vapor is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

Paragraph **2.e.(3)** is deleted and replaced by the following:

  (3) Smog, rust or other corrosion;

Paragraph **2.e.(5)** is deleted and replaced by:

  (5) Discharge, dispersal, seepage, migration, release or escape of pollutants or "contaminants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against named under Coverage **C.**

    Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

**C.** Under Coverage **C** caused by:

Paragraph **1.d.** is deleted and replaced by:

  d. Aircraft, vehicles, meaning impact from a vehicle, vandalism and malicious mischief;

## SECTION I - EXCLUSIONS

Paragraph **c.** of **A.1. Ordinance Or Law** is deleted and replaced by the following:

   **c.** Requiring any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants or "contaminants".

    Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**A.2. Earth Movement** is replaced with the following:

   Earth Movement, meaning loss of any kind due in whole or in part to any movement of the earth or soil, whether on or off the residence premises and whether combined with water or not, including but not limited to:

   (1) earthquake, including land shock waves or tremors of the earth;

   (2) landslide, mudslide or mudflow;

   (3) subsidence or sinkhole;

   (4) volcanic activity, including lava flow and land shock waves or tremors before, during or after a volcanic eruption; or

   (5) any other earth movement including earth sinking, rising or shifting;

   caused by or resulting from human or animal forces or any act of nature unless direct loss by fire or explosion ensues and then we will pay only for the ensuing loss.

   This exclusion A.2 does not apply to loss by theft.

**A.3 "Water" Damage** is replaced with the following:

   "Water" Damage means:

   a. flood, surface "water", waves, tidal "water", overflow, release or escape of a body of "water" or from a "water" or flood control device, or spray from any of these, whether or not driven by wind;

   b. "water" or "water"-borne material, liquid or semi liquid, which backs up through sewers or drains, or which overflows, or is discharged from a sump, sump pump or related equipment; or

   c. "water" or "water"-borne material, liquid or semi liquid below the surface of the ground whether occurring naturally or artificially, including "water" which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool, spa, hot tub or other structure;

caused by or resulting from intentional or unintentional human or animal forces or any act of nature.

Direct loss by fire, explosion or theft resulting from "water" damage is covered.

The following exclusion is added:

### "Fungi", Wet Or Dry Rot, Or Bacteria

"Fungi", Wet Or Dry Rot, Or Bacteria meaning the presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot, or bacteria.

This exclusion does not apply:

   **a.** When "fungi", wet or dry rot, or bacteria results from fire or lightning; or

   **b.** To the extent coverage is provided for in the "Fungi", Wet Or Dry Rot, Or Bacteria Additional Coverage under Section I - Property Coverages with respect to loss caused by a Peril Insured Against other than fire or lightning.

    Direct loss by a Peril Insured Against resulting from "fungi", wet or dry rot, or bacteria is covered.

## SECTION I - CONDITIONS

The following is added to paragraph **4.** of **B. Duties After Loss:**

   In the event of a "water" loss, you or your representative must immediately, or as soon as practicable, take all reasonable and necessary steps to dry the property and protect the property from contamination of mold or "fungi."

The following condition is added:

### Adjustments to Coverage Limits

The limits of liability for Coverages **A, B, C** and **D** of this policy, as stated in the Declarations, represent our maximum limit of liability, except that adjustments may be made upon each renewal date of this policy. The maximum limit of liability for Coverage **A** may be adjusted upon renewal of this policy to an amount we estimate to be 100% of the replacement cost of the dwelling. However, we will not lower the Coverage A limit without your consent. The maximum limit of liability for Coverages **B, C** and **D** will be adjusted upon each renewal date in the same proportion as the adjustment to Coverage **A.**

The adjusted limits of liability for Coverages **A, B, C** and **D** will be shown in the Declarations and rounded to the next highest $100.

INSURED COPY



You are responsible to make sure your policy limits are sufficient to replace your property. At your request, we will assist you in estimating the replacement cost of your dwelling. We have the right, with advance notice to you, to inspect your property as often as we deem necessary to confirm structural replacement cost and/or condition.

## SECTION II - EXCLUSIONS

### E. Coverage E - Personal Liability And Coverage

#### F - Medical Payments To Others

Paragraph 1. Expected Or Intended Injury is deleted and replaced by the following:

1. **Expected Or Intended Injury**

   "Bodily injury" or "property damage" intended by, or expected to result from the intentional or criminal acts or omissions of any "insured" even if the resulting "bodily injury" or "property damage":

   a. Is of a different kind, quality or degree than initially expected or intended; or

   b. Is sustained by a different person, entity, real or personal property, than initially expected or intended.

   However, this Exclusion E.1. does not apply to "bodily injury" resulting from the use of reasonable force by an "insured" to protect persons or property;

The following three exclusions are added:

#### Pollutants and "Contaminants"

"Bodily injury" or "property damage" caused by or arising out of the discharge, dispersal, release or escape of vapors, fumes, acids, toxic chemicals, toxic gases, toxic liquids, toxic solids, waste materials or other irritants, "contaminants" or pollutants.

This exclusion does not apply to "bodily injury" arising out of such discharge if sudden and accidental.

Arising out of statutorily imposed liability upon any "insured" in any matter, consisting of or caused by vapors, fumes, acids, toxic chemicals, toxic gases, toxic liquids, toxic solids, waste materials or other irritants, "contaminants" or pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

#### Sale or Transfer of Real Property

"Bodily injury" or "Property damage" arising out of the sale or transfer of real property, including, but not limited to:

(a) known or unknown structural defects;

(b) known or hidden defects in the plumbing, heating or electrical systems;

(c) known or unknown soil conditions or drainage problems;

(d) alleged concealment or misrepresentation of any known or unknown conditions in the real property.

#### "Fungi", Wet or Dry Rot or Bacteria

"Bodily injury" or "property damage" arising directly or indirectly, in whole or in part, out of actual, alleged, or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi", wet or dry rot, or bacteria.

"Bodily injury" or "property damage" arising out of liability imposed upon any "insured" person or organization by any governmental authority which in whole or in part, arises out of, or is aggravated by or results from mold, "fungi", wet or dry rot, or bacteria.

## SECTION II - ADDITIONAL COVERAGES

In Paragraphs 1. and 3. of **D. Loss Assessment**, the amount we will pay up to is changed to $2,500.

## SECTION II - CONDITIONS

### B. Severability of Insurance

The entire paragraph of **B. Severability of Insurance** is deleted. B is intentionally left blank. The next letter is **C. Duties after "Occurrence".**

The following is added to paragraph 6. of **C. Duties After 'Occurrence'':**

In addition we will not pay for attorney fees or other litigation costs incurred before the "insured" has provided notice of a claim to us.

## SECTIONS I AND II - CONDITIONS

Paragraph 3. of **C. Cancellation** is deleted and replaced by the following:

3. When this policy is canceled, you may be entitled to a premium refund or owe the company for unpaid earned premium and/or fees. The premium refund or balance due, if any, will be calculated as follows:

    **(a)** If a cancellation is initiated by the company for underwriting reasons or by you due to company or agent error, earned premium shall be computed pro rata;

    **(b)** If a cancellation is for any other reasons, including cancellation for non-payment of premium, the earned premium shall be computed pro rata and the company shall retain a cancellation fee.

The following condition is added:

**State Law Provision**

If there is a discrepancy or conflict between the terms and conditions of this policy and state law, then the policy will be deemed to comply with state law.

All other provisions of this policy apply.

HW A5 00 12 09

INSURED COPY

 **Insurance**

<u>*AAA Fire & Casualty Insurance Company, P.O. Box 24524 Oakland, CA 94623-1524, (800) 207-3618*</u>



| | |
|---|---|
| **POLICY NUMBER:** HO5 - 004012164 | **HOMEOWNERS** |
| **INSURED NAME:** LOIS FAY JENKINS | **HO 04 96 10 00** |
| **AGENT NUMBER:** 044 - 100718 | |

### THIS ENDORSEMENT DOES **NOT** CONSTITUTE A REDUCTION OF COVERAGE.

# <u>NO</u> SECTION II – LIABILITY COVERAGES FOR HOME DAY CARE BUSINESS
# <u>LIMITED</u> SECTION I – PROPERTY COVERAGES FOR HOME DAY CARE BUSINESS

**A.** "Business", as defined in the policy, means:

 **1.** A trade, profession or occupation engaged in on a full-time, part-time, or occasional basis; or

 **2.** Any other activity engaged in for money or other compensation, except the following:

  **a.** One or more activities:

   **(1)** Not described in **b.** through **d.** below; and

   **(2)** For which no "insured" receives more than $2,000 in total compensation for the 12 months before the beginning of the policy period;

  **b.** Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

  **c.** Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

  **d.** The rendering of home day care services to a relative of an "insured".

**B.** If an "insured" regularly provides home day care services to a person or persons other than "insureds" as their trade, profession or occupation, that service is a "business".

**C.** If home day care service is not a given "insured's" trade, profession or occupation but is an activity:

 **1.** That an "insured" engages in for money or other compensation; and

 **2.** From which an "insured" receives more than $2,000 in total/combined compensation from it and any other activity for the 12 months before the beginning of the policy period;

 the home day care service and other activity will be considered a "business".

**D.** With respect to **C.** above, home day care service is only an example of an activity engaged in for money that may be a "business". Any single activity or combination of activities:

 **1.** Described in **A.2.** above, and

 **2.** Engaged in for money by a single "insured";

 may be considered a "business" if the $2,000 threshold is exceeded.

**E.** With respect to **A.** through **D.** above, coverage does not apply to or is limited with respect to home day care service which is a "business". For example, this policy:

 **1.** Does not provide:

  **a.** Section II coverages. This is because a "business" of an "insured" is excluded under **E.2.** of Section II – Exclusions;

  **b.** Coverage, under Section I, for other structures from which any "business" is conducted; and

 **2.** Limits Section I coverage, under Coverage **C** – Special Limits of Liability, for "business" property:

  **a.** On the "residence premises" for the home day care "business" to $2,500. This is because Category **h.** (**e.** in Form **HO 00 08**) imposes that limit on "business" property on the "residence premises";

  **b.** Away from the "residence premises" for the home day care "business" to $500. This is because Category **i.** (**f.** in Form **HO 00 08**) imposes that limit on "business" property away from the "residence premises". Category **i.** does not apply to property described in Categories **j.** and **k.** (**g.** and **h.** respectively in Form **HO 00 08**).

---

**HO 04 96 10 00**      Copyright, Insurance Services Office, Inc., 1999      **Page 1 of 1**
INSURED COPY

 

***AAA Fire & Casualty Insurance Company, P.O. Box 24524 Oakland, CA 94623-1524, (800) 207-3618***

| | |
|---|---|
| **POLICY NUMBER:** HO5 - 004012164 | **HOMEOWNERS** |
| **INSURED NAME:** LOIS FAY JENKINS | **HO 04 16 10 00** |
| **AGENT NUMBER:** 044 - 100718 | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# PREMISES ALARM OR FIRE PROTECTION SYSTEM

We acknowledge the installation of an alarm system and/or automatic sprinkler system approved by us on the "residence premises". You agree to maintain this system or systems, for which we have granted a credit, in working order and to let us know promptly of any change, including removal, made to the system(s).

INSURED COPY



**AAA Fire & Casualty Insurance Company, P.O. Box 24524 Oakland, CA 94623-1524, (800) 207-3618**

| | |
|---|---|
| **POLICY NUMBER:**  HO5 - 004012164 | **HOMEOWNERS** |
| **INSURED NAME:**  LOIS FAY JENKINS | **HO 03 12 10 00** |
| **AGENT NUMBER:**  044 - 100718 | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WINDSTORM OR HAIL PERCENTAGE DEDUCTIBLE
## ALL FORMS EXCEPT HO 00 04 AND HO 00 06

### SCHEDULE*

| |
|---|
| Windstorm Or Hail Deductible Percentage Amount: |
| |
| *Entry may be left blank if shown elsewhere in this policy for this coverage. |

**DEDUCTIBLE**

The following special deductible is added to the policy:

With respect to the peril of Windstorm Or Hail, we will pay only that part of the total of all loss payable under Section I that exceeds the windstorm or hail percentage deductible.

The dollar amount of the windstorm or hail deductible is determined by multiplying the Coverage A limit of liability shown in the Declarations by the deductible percentage amount shown in the Schedule above.

No other deductible in the policy applies to loss caused by windstorm or hail.

All other provisions of this policy apply.

INSURED COPY