# EXHIBIT 2C

57

**D. Loss Assessment**

1. We will pay up to $1,000 for your share of loss assessment charged against you, as owner or tenant of the "residence premises", during the policy period by a corporation or association of property owners, when the assessment is made as a result of:

   a. "Bodily injury" or "property damage" not excluded from coverage under Section II – Exclusions; or

   b. Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided such person:

      (1) Is elected by the members of a corporation or association of property owners; and

      (2) Serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

2. Paragraph I. Policy Period under Section II – Conditions does not apply to this Loss Assessment Coverage.

3. Regardless of the number of assessments, the limit of $1,000 is the most we will pay for loss arising out of:

   a. One accident, including continuous or repeated exposure to substantially the same general harmful condition; or

   b. A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

4. We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

**SECTION II – CONDITIONS**

**A. Limit Of Liability**

Our total liability under Coverage E for all damages resulting from any one "occurrence" will not be more than the Coverage E limit of liability shown in the

58

59

Declarations. This limit is the same regardless of the number of "insureds", claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence".

Our total liability under Coverage F for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Coverage F limit of liability shown in the Declarations.

**B. Severability Of Insurance**

This insurance applies separately to each "insured". This condition will not increase our limit of liability for any one "occurrence".

**C. Duties After "Occurrence"**

In case of an "occurrence", you or another "insured" will perform the following duties that apply. We have no duty to provide coverage under this policy if your failure to comply with the following duties is prejudicial to us. You will help us by seeing that these duties are performed:

1. Give written notice to us or our agent as soon as is practical, which sets forth:

   a. The identity of the policy and the "named insured" shown in the Declarations;

   b. Reasonably available information on the time, place and circumstances of the "occurrence"; and

   c. Names and addresses of any claimants and witnesses;

2. Cooperate with us in the investigation, settlement or defense of any claim or suit;

3. Promptly forward to us every notice, demand, summons or other process relating to the "occurrence";

4. At our request, help us:

   a. To make settlement;

   b. To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

   c. With the conduct of suits and attend hearings and trials; and

60

    **d.** To secure and give evidence and obtain the attendance of witnesses;

**5.** With respect to **C. Damage To Property Of Others** under **Section II – Additional Coverage**, submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if in an "insured's" control;

**6.** No "insured" shall, except at such "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "bodily injury".

**D. Duties Of An Injured Person – Coverage F – Medical Payments To Others**

    **1.** The injured person or someone acting for the injured person will:

        **a.** Give us written proof of claim, under oath if required, as soon as is practical; and

        **b.** Authorize us to obtain copies of medical reports and records.

    **2.** The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

**E. Payment Of Claim – Coverage F – Medical Payments To Others**

Payment under this coverage is not an admission of liability by an "insured" or us.

**F. Suit Against Us**

    **1.** No action can be brought against us unless there has been full compliance with all of the terms under this Section II.

    **2.** No one will have the right to join us as a party to any action against an "insured".

    **3.** Also, no action with respect to Coverage **E** can be brought against us until the obligation of such "insured" has been determined by final judgment or agreement signed by us.

**G. Bankruptcy Of An "Insured"**

Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this policy.

**H. Other Insurance**

This insurance is excess over other valid and collectible insurance except insurance written

62

specifically to cover as excess over the limits of liability that apply in this policy.

**I. Policy Period**

This policy applies only to "bodily injury" or "property damage" which occurs during the policy period.

**J. Concealment Or Fraud**

We do not provide coverage to an "insured" who, whether before or after a loss, has:

1. Intentionally concealed or misrepresented any material fact or circumstance;

2. Engaged in fraudulent conduct; or

3. Made false statements;

relating to this insurance.

## SECTIONS I AND II – CONDITIONS

**A. Liberalization Clause**

If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

This Liberalization Clause does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

1. A subsequent edition of this policy; or

2. An amendatory endorsement.

**B. Waiver Or Change Of Policy Provisions**

A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

**C. Cancellation**

1. You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

**2.** We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing will be sufficient proof of notice.

    **a.** When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

    **b.** When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

    **c.** When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

        **(1)** If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

        **(2)** If the risk has changed substantially since the policy was issued.

    This can be done by letting you know at least 30 days before the date cancellation takes effect.

    **d.** When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

**3.** When this policy is canceled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

**4.** If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

**D. Nonrenewal**

We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

64

**65**

**E. Assignment**

Assignment of this policy will not be valid unless we give our written consent.

**F. Subrogation**

An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

Subrogation does not apply to Coverage **F** or Paragraph **C.** Damage To Property Of Others under Section **II** – Additional Coverages.

**G. Death**

If any person named in the Declarations or the spouse, if a resident of the same household, dies, the following apply:

1. We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death; and

2. "Insured" includes:

   a. An "insured" who is a member of your household at the time of your death, but only while a resident of the "residence premises"; and

   b. With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

Paula F. Downey
President

Jaime Chung
Secretary

66



AAA Insurance
underwritten by CSAA Fire & Casualty Insurance Company
P.O. Box 24524 Oakland, CA 94623-1524 (800) 207-3618

We're now CSAA Fire & Casualty Insurance Company, a AAA Insurer. You'll see our name on information you receive from us. This is a name change only and does not affect your coverage or service in any way.

## NAME CHANGE ENDORSEMENT

Your policy is amended to change the name of the insuring company from:

**AAA Fire & Casualty Insurance Company to CSAA Fire & Casualty Insurance Company**

This change applies wherever the name of the insurance company appears, whether in the policy or any other document related to or affecting the policy. No terms, benefits or conditions of your policy are changed by this endorsement. This change is effective July 1, 2014 and applies to any renewal, reinstatement or replacement of your policy.

AAAEXX 07 14

INSURED COPY



**AAA Fire & Casualty Insurance Company, P.O. Box 24524 Oakland, CA 94623-1524, (800) 207-3618**



POLICY NUMBER:  HO5 - 004012164
INSURED NAME:  LOIS FAY JENKINS
AGENT NUMBER:  044 - 100718

**HOMEOWNERS**
**HW 09 06 10 02**

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# MORTGAGE PAYMENT PROTECTION

For an additional premium, the following Additional Coverage is added to your policy.

**Mortgage Payment Protection**

**BENEFIT (Maximum $18,000)**

1. In consideration of the additional premium set forth separately under the Premium section of the Declaration page, the Company will pay the Benefit as set forth in paragraph 2 below, upon receipt of timely proof that the dwelling described in the policy to which this endorsement is attached has been rendered uninhabitable by reasons of damage caused to said dwelling by fire or other Perils Insured Against.

2. Said Benefit shall be a sum of money to be paid to the insured in monthly installments, each installment to equal the monthly payment due payable on that promissory note executed by the insured which is secured by a first deed of trust or mortgage covering the said dwelling, beginning forty-five (45) calendar days after the occurrence which rendered the said dwelling uninhabitable, and continuing during the period that said dwelling remains uninhabitable but for not more than twelve (12) consecutive such monthly installments.

3. No part of this Benefit shall be paid or payable on account of taxes or insurance, or delinquencies on the insured promissory note or trustee fees or foreclosure costs, or late penalties or other expenses stemming from a breach of the insured's obligations arising under said promissory note or deed of trust or mortgage.

4. This payment will be limited to a maximum of $1,500 per month and will not include any delinquencies, foreclosure costs or late penalties.

**EXCLUSIONS**

This endorsement does not apply to damages caused by flood, landslide or mudflow, by "fungi", wet or dry rot or infestation by "fungi", termites or other wood-destroying organisms, by illegal activity by the insured or of any occupant of said dwelling, by riot, insurrection or war, declared or undeclared, by intrusion of trespassers, by theft, or by interference with the construction or reconstruction and repair of said dwelling. However, this exclusion does not apply to fire or a peril insured against.

**TERMINATION**

All liability under this Endorsement shall terminate 90 calendar days after said dwelling is rendered uninhabitable unless reconstruction or repair of said dwelling has begun; and also when the insured chooses any other residence as his permanent abode. This endorsement shall become part of the policy to which it is attached and the applicable provisions of such policy shall be construed to be part of this Endorsement on the Declarations page.



**AAA Fire & Casualty Insurance Company, P.O. Box 24524 Oakland, CA 94623-1524, (800) 207-3618**



POLICY NUMBER:   HO5 - 004012164
INSURED NAME:     LOIS FAY JENKINS
AGENT NUMBER:     044 - 100718

HOMEOWNERS
HW 04 95 12 09

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# WATER BACK UP AND
# SUMP DISCHARGE OR OVERFLOW

### A. Coverage

We insure, up to $5,000, for direct physical loss, not caused by the negligence of an "insured", to property covered under Section I caused by "water", or "water"-borne material, which:

1. Backs up through sewers or drains; or

2. Overflows or is discharged from a:

   a. Sump, sump pump; or

   b. Related equipment;

   even if such overflow or discharge results from mechanical breakdown. This coverage does not apply to direct physical loss of the sump pump, or related equipment, which is caused by mechanical breakdown.

This coverage does not increase the limits of liability for Coverages **A, B, C** or **D** stated in the Declarations.

### B. Section I - Perils Insured Against

With respect to the coverage described in **A.** above, Paragraph:

**A.2.c.(6)(b)** in Form HO 00 03;

**A.2.e.(2)** in Form HO 00 05;

**2.j.(2)** in Endorsement HO 05 24;

**3.j.(2)** in Endorsement HW 17 31; and

**2.c.(6)(b)** in Endorsement HO 17 32;

is deleted and replaced by the following:

Latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;

### C. Special Deductible

The following replaces any other deductible provision in this policy with respect to loss covered under this endorsement.

We will pay only that part of the total of all loss payable under Section I that exceeds $1,000. No other deductible applies to this coverage. This deductible does not apply with respect to Coverage **D** - Loss of Use.

### D. Exclusion

The "Water" Damage exclusion is deleted and replaced by the following:

"Water" Damage, meaning:

a. flood, surface "water", waves, tidal "water", overflow, release or escape of a body of water or from a "water" or flood control device, or spray from any of these, whether or not driven by wind;

b. "water", or "water"-borne material, liquid or semi liquid, which:

   (1) backs up through sewers or drains; or

   (2) overflows or is discharged from a sump, sump pump or related equipment;

   as a direct or indirect result of flood; or

c. "Water", or water-borne material, liquid or semi liquid below the surface of the ground, whether occurring naturally or artificially, including "water", which:

   (1) exerts pressure on; or

   (2) seeps or leaks through;

   a building, sidewalk, driveway, foundation, swimming pool, spa, hot tub or other structure;

caused by or resulting from intentional or unintentional human or animal forces or any act of nature.

Direct loss by fire or explosion or theft resulting from "water" damage is covered.

All other provisions of this policy apply.



**AAA Fire & Casualty Insurance Company, P.O. Box 24524 Oakland, CA 94623-1524, (800) 207-3618**



**POLICY NUMBER:** HO5 - 004012164
**INSURED NAME:** LOIS FAY JENKINS
**AGENT NUMBER:** 044 - 100718

**HOMEOWNERS
HO 04 55 03 03**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# IDENTITY FRAUD EXPENSE COVERAGE

## DEFINITIONS

With respect to the provisions of this endorsement only, the following definitions are added:

1. "Identity fraud" means the act of knowingly transferring or using, without lawful authority, a means of identification of an "insured" with the intent to commit, or to aid or abet another to commit, any unlawful activity that constitutes a violation of federal law or a felony under any applicable state or local law.

2. "Expenses" means:

    a. Costs for notarizing affidavits or similar documents attesting to fraud required by financial institutions or similar credit grantors or credit agencies.

    b. Costs for certified mail to law enforcement agencies, credit agencies, financial institutions or similar credit grantors.

    c. Lost income resulting from time taken off work to complete fraud affidavits, meet with or talk to law enforcement agencies, credit agencies and/or legal counsel, up to a maximum payment of $200 per day. Total payment for lost income is not to exceed $5,000.

    d. Loan application fees for re-applying for a loan or loans when the original application is rejected solely because the lender received incorrect credit information.

    e. Reasonable attorney fees incurred as a result of "identity fraud" to:

        (1) Defend lawsuits brought against an "insured" by merchants, financial institutions or their collection agencies;

        (2) Remove any criminal or civil judgments wrongly entered against an "insured"; and

        (3) Challenge the accuracy or completeness of any information in a consumer credit report.

    f. Charges incurred for long distance telephone calls to merchants, law enforcement agencies, financial institutions or similar credit grantors, or credit agencies to report or discuss an actual "identity fraud".

The following Additional Coverage is added under **Section I:**

## IDENTITY FRAUD EXPENSE

We will pay up to $15,000 for "expenses" incurred by an "insured" as the direct result of any one "identity fraud" first discovered or learned of during the policy period.

Any act or series of acts committed by one or more persons, or in which such person or persons are aiding or abetting others against an "insured", is considered to be one "identity fraud", even if a series of acts continues into a subsequent policy period.

This coverage is additional insurance.

## EXCLUSIONS

The following additional exclusions apply to this coverage:

We do not cover:

1. Loss arising out of or in connection with a "business".

2. "Expenses" incurred due to any fraudulent, dishonest or criminal act by an "insured" or any person aiding or abetting an "insured", or by any authorized representative of an "insured", whether acting alone or in collusion with others.

3. Loss other than "expenses".

## SPECIAL DEDUCTIBLE

We will pay only that part of the loss that exceeds $250. No other deductible applies to "identity fraud" expense coverage.

## SECTION I – CONDITION

### B. Duties After Loss

The following is added:

Send to us, within 60 days after our request, receipts, bills or other records that support your claim for "expenses" under "identity fraud" coverage.

All other provisions of this policy apply.

© ISO Properties, Inc., 2002



**AAA Fire & Casualty Insurance Company, P.O. Box 24524 Oakland, CA 94623-1524, (800) 207-3618**

| | | |
|---|---|---|
| **POLICY NUMBER:** | HO5 - 004012164 | **HOMEOWNERS** |
| **INSURED NAME:** | LOIS FAY JENKINS | **HO 04 53 10 00** |
| **AGENT NUMBER:** | 044 - 100718 | |

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# CREDIT CARD, ELECTRONIC FUND TRANSFER CARD OR ACCESS DEVICE, FORGERY AND COUNTERFEIT MONEY COVERAGE
### INCREASED LIMIT

### SCHEDULE*

---

**SECTION I – PROPERTY COVERAGES**
 **ADDITIONAL COVERAGES**
   6.  **Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money**
     The limit of liability for this coverage is increased as noted below.


   **Increase In Limit Of Liability**                **Total Limit Of Liability**




All other provisions of this policy apply.

*Entries may be left blank if shown elsewhere in this policy for this coverage.

---

                Copyright, Insurance Services Office, Inc., 1999

INSURED COPY

 **Insurance**   <u>*AAA Fire & Casualty Insurance Company, P.O. Box 24524 Oakland, CA 94623-1524, (800) 207-3618*</u>   

| | |
|---|---|
| **POLICY NUMBER:** HO5 - 004012164 | **HOMEOWNERS** |
| **INSURED NAME:** LOIS FAY JENKINS | **HW 00 08 05 05** |
| **AGENT NUMBER:** 044 - 100718 | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ASSURANCE +™ ENDORSEMENT

### SCHEDULE*

**Endorsements applicable:**

**\*Entries may be left blank if shown elsewhere in this policy for this coverage.**

For and in consideration of a collection of premium, the above scheduled endorsements are attached and form part of the policy.

All other policy terms and conditions apply.

This coverage does not increase the limits of liability for Coverages **A, B, C** or **D** stated in the Declarations.

All other provisions of this policy apply.

**HW 00 08 05 05**   **Page 1 of 1**

INSURED COPY



**AAA Fire & Casualty Insurance Company**
P.O. Box 24524 Oakland, CA 94623-1524
For claims or customer service call:
(800) 207-3618

# Homeowners Policy Declarations

**POLICY NUMBER: HO5 - 004012164**
**TIER: Q5**
**RENEWAL DECLARATION**

**LOCATION OF INSURED PROPERTY**
3329 CHARDONNAY LN
NORMAN OK 73071

**AGENCY NAME AND ADDRESS**
AAA OK/100718/LEWIS-MINYEN          044-100718
430 W MAIN ST
NORMAN OK 73069          (405) 801-3353

**NAMED INSURED AND MAILING ADDRESS**

LOIS FAY JENKINS
3329 CHARDONNAY LN
NORMAN OK 73071-5085

| POLICY PERIOD | | |
|---|---|---|
| FROM: 09/16/17 | TO: 09/16/18 | TIME: 12:01 A.M. |

This policy will continue for successive policy terms as long as the premiums required are paid, subject to the rate, rules and forms then in effect.

**DESCRIPTION OF PROPERTY**          **PREMIUM TO BE PAID BY**   MORTGAGEE

| YR BUILT | YR ROOF BUILT | CONSTRUCTION TYPE | PROT. CLASS | ROOF TYPE | OCCUPANCY | USAGE | # OF RES |
|---|---|---|---|---|---|---|---|
| 2006 | 2014 | FRAME, NOT ALUMINUM OR PLASTIC | 02 | ASPHALT/FIBERGLASS | OWNER | PRIMARY | 1 |

**COVERAGES AND LIMITS OF LIABILITY**
Insurance is provided only with respect to the following coverages for which a specific limit of liability is shown. Subject to all conditions of this policy.

| SECTION I | | | | SECTION II | |
|---|---|---|---|---|---|
| A | B | C | D | E | F |
| DWELLING | OTHER STRUCTURES | PERSONAL PROPERTY | LOSS OF USE | PERSONAL LIABILITY EACH OCCURRENCE | MEDICAL PAYMENTS TO OTHERS |
| 289,606 * | 28,961 | 202,724 | 86,882 | 300,000 | 5,000 |

* Your Section I coverage limits may have been changed to reflect changes in construction costs & other matters affecting replacement costs.

| Deductible - Section I | (In case of loss under Section I, we cover only that part of the loss over the deductible(s)) |
|---|---|
| ALL PERILS $ 1500 | Wind/Hail $ 2896 |

**FORMS AND ENDORSEMENTS**

| NUMBER/ EDITION DATE | FORMS AND ENDORSEMENTS MADE PART OF THIS POLICY AT TIME OF ISSUANCE | PREMIUM |
|---|---|---|
| HW 00 08 05 05 | ASSURANCE+ | 12.00CR |
| HO 04 53 10 00 | CC/EFT FORGERY/COUNTERFEIT COV - LIMIT: 5000 | 4.00 |
| HO 04 55 03 03 | IDENTITY FRAUD - LIMIT: 15000 | 25.00 |
| HW 04 95 12 09 | WATER BACK UP & SUMP OVERFLOW - LIMIT: 5000 - DEDUCTIBLE: 1000 | 45.00 |
| HW 09 06 10 02 | MORTGAGE PROTECTION | 7.00 |
| AAAEXX 07 14 | NAME CHANGE ENDORSEMENT | INCL. |
| HO 00 05 10 00 | HO5 COMPREHENSIVE FORM (10/06) | INCL. |
| HO 03 12 10 00 | WINDSTORM/HAIL % DEDUCTIBLE:1% | INCL. |
| HO 04 16 10 00 | PREMISES ALARM OR FIRE PROTECT | INCL. |
| HO 04 96 10 00 | NO LIABILITY FOR HOME DAYCARE | INCL. |
| | Continued on next page... | |

**ADDITIONAL EXPOSURES**

| SWIMMING POOL | SPA/HOT TUB | TRAMPOLINE | WOOD STOVE | # OF LIVESTOCK | # DOGS |
|---|---|---|---|---|---|
| N | N | N | N | 0 | 2+ |

| | |
|---|---|
| BASIC POLICY PREMIUM | |
| ENDORSEMENT PREMIUM | |
| TOTAL POLICY PREMIUM | |

**DISCOUNTS**
AAA MEMBERSHIP, COMPANION POLICY, PROTECTIVE DEVICE(S).

**1st MORTGAGEE**
MORTGAGE CLEARING CORPORATION
5612 S LEWIS AVE.
TULSA OK 74105

118290

Countersignature

This Declaration is part of your policy. It supersedes and controls anything to the contrary.
It is otherwise subject to all other terms of the policy.

Authorized Representative

| HW 02 OK 04 07 | Policy Number: HO5 - 004012164 | Named Insured: LOIS FAY JENKINS | Page 1 of 2 |

INSURED COPY



**AAA Fire & Casualty Insurance Company**
P.O. Box 24524 Oakland, CA 94623-1524
For claims or customer service call:
(800) 207-3618

# Homeowners Policy Declarations

**POLICY NUMBER: HO5 - 004012164**
**TIER: Q5**
**RENEWAL DECLARATION**

**LOCATION OF INSURED PROPERTY**
3329 CHARDONNAY LN
NORMAN OK 73071

**AGENCY NAME AND ADDRESS**
AAA OK/100718/LEWIS-MINYEN          044-100718
430 W MAIN ST
NORMAN OK 73069          (405) 801-3353

**NAMED INSURED AND MAILING ADDRESS**
LOIS FAY JENKINS
3329 CHARDONNAY LN
NORMAN OK 73071-5085

| POLICY PERIOD | | |
|---|---|---|
| **FROM:** 09/16/17 | **TO:** 09/16/18 | **TIME:** 12:01 A.M. |

This policy will continue for successive policy terms as long as the premiums required are paid, subject to the rate, rules and forms then in effect.

**DESCRIPTION OF PROPERTY**          **PREMIUM TO BE PAID BY**     MORTGAGEE

| YR BUILT | YR ROOF BUILT | CONSTRUCTION TYPE | PROT CLASS | ROOF TYPE | OCCUPANCY | USAGE | # OF RES |
|---|---|---|---|---|---|---|---|
| 2006 | 2014 | FRAME, NOT ALUMINUM OR PLASTIC | 02 | ASPHALT/FIBERGLASS | OWNER | PRIMARY | 1 |

**COVERAGES AND LIMITS OF LIABILITY**
Insurance is provided only with respect to the following coverages for which a specific limit of liability is shown. Subject to all conditions of this policy.

| SECTION I | | | | SECTION II | |
|---|---|---|---|---|---|
| A | B | C | D | E | F |
| DWELLING | OTHER STRUCTURES | PERSONAL PROPERTY | LOSS OF USE | PERSONAL LIABILITY EACH OCCURRENCE | MEDICAL PAYMENTS TO OTHERS |
| 289,606 * | 28,961 | 202,724 | 86,882 | 300,000 | 5,000 |

\* Your Section I coverage limits may have been changed to reflect changes in construction costs & other matters affecting replacement costs.

| Deductible - Section I | (In case of loss under Section I we cover only that part of the loss over the deductible(s)) |
|---|---|
| ALL PERILS $ 1500 | Wind/Hail $   2896 |

## FORMS AND ENDORSEMENTS

| NUMBER/ EDITION DATE | FORMS AND ENDORSEMENTS MADE PART OF THIS POLICY AT TIME OF ISSUANCE | PREMIUM |
|---|---|---|
| HW A5 00 12 09 | HO-5 AMENDATORY ENDORSEMENT | INCL. |
| HW 01 35 04 07 | SPECIAL PROVISIONS - OK | INCL. |
| HW 09 00 12 09 | HO ENHANCE-150% EXTD REPL COST | INCL. |
| HW 09 15 03 08 | VICIOUS DOG LIABILITY EXCL | INCL. |
| HW 24 82 05 06 | PERSONAL INJURY | INCL. |
| 438 BFU NS | LENDER'S LOSS PAYABLE | INCL. |

**ADDITIONAL EXPOSURES**

| SWIMMING POOL | SPA/HOT TUB | TRAMPOLINE | WOOD STOVE | # OF LIVESTOCK | # DOGS |
|---|---|---|---|---|---|
| N | N | N | N | 0 | 2+ |

| | |
|---|---|
| BASIC POLICY PREMIUM | $ 2,146.00 |
| ENDORSEMENT PREMIUM | $ 69.00 |
| TOTAL POLICY PREMIUM | $ 2,215.00 |

**DISCOUNTS**
AAA MEMBERSHIP, COMPANION POLICY, PROTECTIVE DEVICE(S).

**1st MORTGAGEE**
MORTGAGE CLEARING CORPORATION
5612 S LEWIS AVE.
TULSA OK 74105

118290

Countersignature

This Declaration is part of your policy.  It supersedes and controls anything to the contrary.
It is otherwise subject to all other terms of the policy.

Authorized Representative

INSURED COPY

Governor
Mary Fallin



Insurance Commissioner
John D. Doak

Oklahoma Insurance Department
State of Oklahoma

September 06, 2018

LOIS FAY JENKINS
27109 White Plains Way
Leesburg, FL 34748-1318

RE:   CSAA FIRE AND CASUALTY
      OID FILE NUMBER: 70350

Dear LOIS FAY JENKINS;

Enclosed is a copy of a letter received from the above referenced company, which is in response
to our inquiry on your behalf.

The company states that the damage to your home was caused by constant and repeated leakage
and seepage which were not hidden or unknown. Unfortunately, our office does not have the
authority to determine the cause of loss, nor can we require the company to change their position.
Ultimately, only a court of law having proper jurisdiction can resolve questions of fact such as
this.

We regret that our response was not more favorable, but we hope that the information provided
is of assistance to you. If you have any additional questions, please do not hesitate to contact our
office.

Sincerely,

Jason Johnston
Senior Claims Processor Reviewer
Consumer Assistance/Claims Division
jason.johnston@oid.ok.gov
Phone: (405)521-2991 Fax: (405)521-6652

**EXHIBIT**

**2**



**CSAA Fire & Casualty Insurance Company**
P.O. Box 24523
Oakland, CA 94623-1523
(800) 207-3618 - Phone
(877) 548-1610 - Fax

August 9, 2018

Oklahoma Insurance Department
RECEIVED
AUG 13 2018
Consumer Assistance Division

Oklahoma Insurance Department
Consumer Assistance/Claims Division
5 Corporate Plaza
3625 N.W. 56th Street, Suite 100
Oklahoma City, OK 73112-4511

Attn:  Jason Johnston — Senior Claims Processor Reviewer

RE:  CSAA FCIC Insured:          Jenkins, Lois
    CSAA FCIC Policy No.:      HO5-004012164
    CSAA FCIC Claim No.:      1002-68-2784
    Date of Loss:                March 29, 2018
    Insurance Company:        CSAA Fire & Casualty Insurance Company
    Type of Coverage:          Homeowners Property
    NAIC Number:              10921
    File Number:                70350
    Complainant:               Lois Jenkins

Dear Jason Johnston:

CSAA Fire and Casualty Insurance Company ("CSAA FCIC") is in receipt of the Oklahoma
Insurance Departments inquiry regarding the above-referenced claim. We have evaluated the
information presented in the complaint and appreciate the opportunity to respond.

On May 17, 2018, Ms. Lois Jenkins contacted CSAA FCIC to file a claim for water damage to the
living room floor after the laundry room sink overflowed on March 29, 2018. Ms. Jenkins stated
she cleaned up the water herself and had a handyman come to repair the sink on the date of
loss. Ms. Jenkins advised she had already sold the home on April 12, 2018 and the flooring was
not damaged at that time. Ms. Jenkins provided the new owner's contact information in order
to setup the home inspection and any additional information he could provide. Mr. Richard
Turnbull, CSAA FCIC inside adjuster, spoke with Ms. Jenkins and advised her of her policy
coverages and deductible. He also discussed the claim expectations and timeframes.

On May 18, 2018, Mr. Turnbull requested the home inspection photos and reports from Ms.
Jenkins. Mr. Turnbull provided the email address to send the information for review.

On May 24, 2018, Mr. Michael White, Independent Adjuster with U.S. Adjusting Services,
inspected Ms. Jenkin's home. Mr. White found water damage to the laundry room vanity,
cabinetry, baseboards and walls. Water damage was also noted to the mudroom baseboards
and living room wood floors were buckled. Mr. White noted the new owner's realtor found the
damage on April 11, 2018 from the laundry room sink overflow.

On June 4, 2018, Mr. Turnbull contacted Mr. Patrick Evans, the new owner, to request a copy of the home inspection. Mr. Evans advised he would have his realtor forward the information to Mr. Turnbull.

On June 8, 2014, Mr. Turnbull received the home inspection report however the inspection occurred on March 5, 2018 which was prior to the loss date and did not show a leak and no water damage was noted.

On June 19, 2018, American Leak Detection completed a pressure test and hydrostatic test to determine if there were any new leaks or if the living room floor was damaged by the laundry room sink overflow. American Leak Detection found the fresh water and drain lines to be leak free.

On June 22, 2018, Mr. Turnbull advised Ms. Jenkins the claim was denied due to constant and repeated seepage and leakage which was not hidden or unknown. Ms. Jenkins advised she did not agree with the coverage decision and would obtain a public adjuster or attorney.

On June 28, 2018, Ms. Jenkins requested a certified copy of her policy. The certified copy was requested by Danielle Perez, CSAA FCIC senior adjuster. The certification was received on July 3, 2018 and a copy was sent to Ms. Jenkins via postal mail.

On July 9, 2018, a letter of representation was received and the claim was reassigned to Mrs. Perez. Mrs. Perez reviewed all of the document received by the public adjuster, Gregg Cannon with Coppermark public adjusters. Mrs. Perez advised Mr. Cannon the documents and sworn proof of loss from Ms. Jenkins does not provide any additional information about the loss. On the sworn proof of loss Ms. Jenkins stated the loss occurred on May 17, 2018, however, this was not when the sink overflowed. The lack of proper mitigation and constant moisture allowed additional damage to the home for months. Mrs. Perez advised the coverage decision would remain unchanged.

On August 7, 2018, Mr. Cannon contacted Mrs. Perez advising there was additional damage to the subfloor and requested a re-inspection. Mrs. Perez advised there is no coverage for the loss due to constant and repeated seepage and we would not re-inspect the property.

To date, CSAA FCIC has not received any additional information showing the date of loss originally reported is incorrect. Ms. Jenkins states the overflow occurred March 29, 2018 and the loss was not reported until May 17, 2018. The damage was known as Ms. Jenkins cleaned up water after the loss and the damages are visible per our inspection photos. Due to the circumstances the constant and repeated exclusion will apply and our decision of a denial will remain. As the claim was denied CSAA FCIC will not provide a scope of repairs as one was not written. It also appears the work has begun according to Mr. Cannon's recent statement to Mrs. Perez.

As an insurance company, we have the duty to investigate the losses and assess coverage in accordance with our findings and pursuant to the policy. To this end, we believe we have conducted an objective and fair investigations in reference to Ms. Jenkin's claim. We regret Ms. Jenkin's has not had a more positive claims experience; however, her claim was handled in accordance with the policy provisions and state regulations.

Sincerely,

Kimberly Mackall
Homeowner Claim Manager
405-753-8139
Regional Claims Center
E-mail: DOI.Inquiries@csaa.com



CSAA Fire & Casualty Insurance Company
P.O. Box 24523
Oakland, CA 94623-1523

Ιlμlıԁ•Ιⱨ•Ιⱨ•Ιⱨ•μlⱨ•μⱨ•μlμ•Ι•μllμⱨⱨμllⱨ

LOIS FAY JENKINS
27109 WHITE PLAINS WAY
LEESBURG, FL 34748-1318



**YOUR CLAIM INFORMATION**

| Claim number | 1002-68-2784 |
| Policy Number | HO54012164 |
| Policyholder | LOIS FAY JENKINS |
| Date of Incident | March 29, 2018 |

Rich Turnbull
**405-493-7014**

Regular Claims Center hours are
Monday – Friday 8:00 AM - 7:00 PM,
Central Time

June 27, 2018

Dear Lois Fay Jenkins:

We have completed our investigation of your claim. Based on the facts of this investigation, we have concluded that your policy does not provide coverage for your claim.

## Results of our investigation

In investigating the cause of damage, we contacted Independent Adjuster Michael White and American Leak Detection to assess the damage to your property. After conducting an inspection, a report was prepared which includes detailed findings of the inspection and a determination that the damage was caused by the laundry room sink which overflowed onto the kitchen and living room floor. This occurred in March and the presence of moisture was present more than months. American Leak Detection confirmed there are no current leaks in the home.

Your policy includes coverage for the cost of repairing physical damage to your home and its other structures, if applicable, unless the damage or its cause is excluded or excepted from coverage by one or more provisions in the policy. Unfortunately, the damage detailed in the report is specifically mentioned in your policy as being excluded and/or excepted from coverage. Because of this, we are unable to provide coverage for this loss.

For your reference, below is the specific section(s) of your policy that pertains to this claim.

**AGREEMENT**

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

**SECTION I . PERILS INSURED AGAINST**

We insure against risk of direct physical loss to property described in Coverages **A, B** and **C**.
We do not insure, however, for loss:

**A. Under Coverages A, B** and **C**:

   **2. Caused by:**

      **d.** Constant or repeated seepage or leakage of "water" or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of "water" or the presence or condensation of humidity, moisture or vapor is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

**SECTION I - CONDITIONS**

**B. Duties After Loss**

   In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, or an "insured" seeking coverage, or a representative of either:

   **1.** Give prompt notice to us or our agent;

**EXHIBIT**

**3**

4. Protect the property from further damage. If repairs to the property are required, you must:

   a. Make reasonable and necessary repairs to protect the property; and

   b. Keep an accurate record of repair expenses;

In the event of a "water" loss, you or your representative must immediately, or as soon as practicable, take all reasonable and necessary steps to dry the property and protect the property from contamination of mold or "fungi."

## Protecting your property from further damage

Although your policy does not cover this claim, you have a responsibility to take steps to protect the property from additional or subsequent damage.

## Other important information

### Additional facts about your claim

We reserve the right to raise any additional facts or legal support for our decision. If you have additional information you believe is relevant to your claim, please contact us at the phone number listed under Your Claim Information box.

### Actions against AAA

Please note your insurance policy provides under **SECTION I – CONDITIONS, Suit Against Us**, that no action shall be brought against **AAA** unless there has been compliance with the policy provisions and the action is filed in a court of competent jurisdiction within two years of the date of loss.

If you have any questions, you can contact us at the phone number listed under Your Claim Information box. We value you as our customer and appreciate the opportunity to assist you.

Sincerely,

*Sayde Brooks* on behalf of *Rich Turnbull*

Rich Turnbull
Claims Representative



**BIOCHECK**

**CORPORATION**

# Biocheck Corporation

2703 S. I-35 Service Rd. · Oklahoma City, OK 73129
Phone: (405) 619-5802 · Fax: (405) 619-5803

# Inspection Report

**Project:**
**3329 Chardonnay Ln.**
**Norman, OK 73071**

**Prepared For:**
**Eric Hamilton**
**Trinity Restoration**

**July 3, 2018**

Submitted by:

Phillip H. Dang, CMC

This report applies only to the specific items inspected and tested. It is not indicative of the qualities of apparently identical or similar products or procedures and may not reflect other conditions present. It is not the intent of this report to make any statements regarding potential health effects. This report may not be reproduced, except in full, without written approval from Biocheck Corporation.



EXHIBIT
4